UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 14-358 (DSD/JJK)

UNITED STATES OF AMERICA,

       Plaintiff,

   v.                             **GOVERNMENT'S TRIAL BRIEF**

ROXANNE MERRELL,

       Defendant.

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Katharine T. Buzicky and Sarah E. Hudleston, Assistant United States Attorneys, hereby submits this trial brief outlining the evidence the government intends to produce at trial.  This brief is also submitted in support of three of the government's motions *in limine*. The United States has filed separate briefing under seal regarding the government's other motions *in limine.*

## BACKGROUND

The government anticipates the evidence at trial will prove the following facts:

**1.**    **The Investigation into Travis Guenthner Leads Investigators to Roxanne Merrell.**

Roxanne Merrell is charged with two counts of Production of Child Pornography in violation of Title 18, United States Code, Sections 2251(a) and 2251(e). This prosecution arose out of a 2013 investigation into the activities of Travis Guenthner, an individual then living in Washburn, North Dakota. Guenthner is originally from Cottage Grove,

Minnesota, and had also lived in Apache Junction, Arizona for many years.[1]   Special Agent (SA) Randy Helderop of Homeland Security Investigations (HSI), Minot, North Dakota Office, led the federal investigation into Guenthner. When North Dakota law enforcement officers seized Guenthner's computer and cellular telephone, SA Pat Helfrich of the North Dakota Bureau of Criminal Investigation conducted the forensic analysis of the devices. Helfrich found numerous previously-unknown images of child pornography, and the names of many women and girls in Guenthner's cell phone "contacts" list. Identifying potential victims and producers of child pornography became a priority for the agents.

Among the images on Guenthner's computer was a folder containing photographs of a child, including several close-up images of a pre-pubescent child's genitals and buttocks.  The name of the folder was a female nickname; the child depicted is referred to as Minor A.[2]  (The folder is referred to as "Folder A" in this memorandum.) A woman's hands are visible in some of the images.  Forensic examination revealed that the images were created on May 20, 2010.   Guenthner's cell phone also contained two non-pornographic photographs of a young girl.

SA Helderop and other North Dakota law enforcement officers interviewed Guenthner numerous times in order to identify potential victims, including Minor A.  The agents used the names of Guenthner's cell phone contacts to assist in discussing potential

---

[1] Guenthner pleaded guilty to multiple counts of production of child pornography and other child exploitation offenses in the District of North Dakota in May 2014, and is currently serving a life sentence. *United States v. Travis Lee Guenthner*, 1:13-cr-057-01 (D.N.D. May 6, 2014)

[2]  Names and other identifying details about Minor A are withheld from this memorandum, in order to protect Minor A's privacy.

victims with Guenthner.   One of the contacts in Guenthner's cell phone was "Roxy Merrell."   In October 2013, SA Helderop called Merrell, who indicated that she knew Guenthner, but denied that Guenthner had been at her home.  SA Helderop later called Merrell again to tell her about the images in Folder A; Merrell denied any connection to them.

During his interviews with SA Helderop, Guenthner initially provided misleading information about the images in Folder A.  However, during a February 2014 interview, Guenthner finally admitted that a woman named "Roxy Merrell" sent him the images, which she had produced at his request.  Guenthner also identified Minor A and stated that he offered Merrell $100,000 to take the child pornography photos and send them to him, but that he never actually paid Merrell.

SA Helderop sent a summary of his investigation to HSI-St. Paul. After receiving information from his counterparts in North Dakota in March 2014, Homeland Security Special Agent Jared Drengson initiated an investigation of Roxanne Merrell.   SA Drengson obtained 2010 call records from Merrell's cellular telephone, and learned that Merrell and Guenthner had called each other on numerous occasions around the time the pictures were taken.

## 2.   **Search Warrant and Interview of The Defendant.**

SA Drengson obtained a federal search warrant authorizing him to photograph and inspect Roxanne Merrell's hands.  His photographs of Merrell's hands could then be compared to the hands shown in the child pornography images by an HSI expert, SA Jim

Cole, who conducts comparisons of faces and skin depicted in imagery.  SA Cole works

almost exclusively on child exploitation cases.

SA Drengson executed the search warrant on March 14, 2014. He, SA Ann Quinn

of the Minnesota Bureau of Criminal Apprehension (BCA), and Cottage Grove Police

Detective Thomas Ueland went to Merrell's Cottage Grove home.  Merrell was not present

when SA Drengson and his colleagues arrived at her residence, but she returned home and

agreed to be interviewed.  During the interview, Merrell admitted to taking the child

pornography pictures of Minor A, admitted that her hands are in the photographs, and

admitted that she sent them to Travis Guenthner via text message in exchange for money.

She also admitted that Guenthner had specifically requested pictures of Minor A "below

the waist" and that she used her fingers to spread Minor A's genitalia apart.

To execute the search warrant, SA Drengson took several dozen pictures of

Merrell's hands at the Cottage Grove Police Department.  SA Drengson sent his

photographs to SA Cole, who then performed an expert comparison.  SA Cole's results

showed a strong resemblance between the hands in the child pornography images and

Merrell's hands.

## MOTIONS IN LIMINE

**1.**    **Motion to Preclude the Defendant or her Counsel from Referring to Potential Punishment if Convicted.**

The government has moved to preclude the defendant from making any reference to

the sentence she may receive if convicted during the guilt phase of the trial.

It is improper for either the defense or prosecution to comment or argue the potential punishment in the presence of the jury.  "The argument of counsel, generally speaking, should be confined to the evidence that has been produced and to such inferences as may reasonably be drawn therefrom."  *Brennan v. United States*, 240 F.2d 253, 263 (8th Cir. 1957).  The jury will be instructed that punishment, if any, is solely the province of the Court.  The Court should preclude any reference to potential punishment.

## 2.    Motion to Preclude the Defendant or her Counsel from Referring to Hearsay Statements of the Defendant.

As noted above, the defendant made a number of inculpatory admissions to investigators.  The government intends to offer those statements as admissions of a party-opponent under Rule 801.  The government has provided copies of these statements to the defendant and her counsel.

It is well-established that, although a defendant's own out-of-court statements may be admitted against her as an admission by a party-opponent, *see* Fed. R. Evid. 801(d)(2)(A), a defendant may not offer, on her own behalf, her out-of-court statements that are merely consistent with her plea of not guilty.  *See United States v. Waters*, 194 F.3d 926, 930-31 (8th Cir. 1999) (district court properly refused to admit defendant's prior exculpatory statements made during polygraph examination).

## 3.    Motion for an Order to Sequester Potential Witnesses.

The government has moved to sequester potential witnesses except for the government's case agent, SA Jared Drengson.  Federal Rule of Evidence 615 allows the exclusion of witnesses at the "request of a party."  This rule does not authorize exclusion of (1) a party who is a natural person, (2) an officer or employee of a party which is not a

natural person designated as its representative by its attorney, (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause, or (4) a person authorized by statute to be present. Government agents fall within the exceptions to this rule. *United States v. Sykes*, 977 F.2d 1242, 1245 (8th Cir. 1992).

## EVIDENTIARY ISSUES

### 1.    Evidence Regarding Production of Uncharged Images of Minor A

In addition to introducing child pornography images the defendant is charged with producing, the government may introduce evidence of other child pornography images if those images are "inextricably interviewed" with the charged offense. *See generally United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004). In this case, the defendant produced several child pornography images which have not been charged, and several images of Minor A's buttocks and clothed pubic area, which are more properly described as child erotica. The government has properly disclosed their existence to the defense.

Admission of uncharged child pornography images without the need to conduct a Rule 404(b) analysis has been uphold when those images "helped complete the story behind the charged offense." *United States v. Angle*, 234 F.3d 326, 343 (7th Cir. 2000). In addition, Rule 404(b) does not even apply if the other crimes, wrongs, or acts are "intrinsic to the charged offense . . . because such acts are not truly separate bad acts that show propensity, but are intrinsic evidence [that] is inextricably intertwined with the crime charged." *United States v. Maxwell*, 643 F.3d 1096, 1100 (8th Cir. 2011) (quotations omitted). "Evidence of other wrongful conduct is considered intrinsic when

it is offered for the purpose of providing the context in which the charged crime occurred. Such evidence is admitted because [it] completes the story or provides a total picture of the charged crime." *United States v. Brooks*, 715 F.3d 1069, 1076 (8th Cir. 2013) (quotation omitted).

The government only intends to offer limited evidence that the other images exist and were produced by Merrell. Specifically, witnesses may testify that they found the images, and describe what they depict, but the government will not seek admit the majority of the actual images or videos into evidence. The sole exceptions to this will be an image of Minor A in a nightshirt and underwear taken on May 20, 2010, which was used during the investigation to help identify Minor A, and an uncharged child pornography image used by SA Jim Cole to conduct his analysis. These images are relevant to the investigation, and will be necessary to assist the jury in understanding the context and progression of the investigation. Without their admission, several witnesses' testimony will be confusing and incomplete.

**2.      Presentation of Child Pornography Evidence to the Jury**

The Indictment charges the defendant with producing two images of child pornography. In order to avoid re-victimizing Minor A and to minimize the negative impact on jurors and court staff while ensuring that the government meets its burden of proof, the government intends to limit its presentation of the child pornography images during trial. *See, e.g.*, *United States v. Ballard*, 2011 WL 6223122, at *1 (11th Cir. Dec. 15, 2011) (affirming government's introduction of child pornography files as well as file names to satisfy the government's burden related to knowledge and intent); *United States*

*v. Becht*, 267 F.3d 767, 771 (8th Cir. 2001).  When introducing and displaying the child pornography images, the government will redact the portions showing the victim's genitals.  (The government will offer into evidence printouts of the unredacted images for the jury's deliberation.)

**3.      Stipulations**

The government offered a stipulation to the defendant regarding the interstate nexus of the charged offenses. The defendant's counsel has informed the government that the defendant will not stipulate to the fact that a picture contained in a text message sent from Minnesota to another state is transported in interstate commerce.  Accordingly, the government will be required to call a witness from the Sprint Corporation to testify about Sprint's servers and how text messages travel in interstate commerce.

**4.      Admission Certified Business Records from Sprint**

The government intends to offer records of calls between the defendant and Travis Guenthner at trial.  Those records are maintained by Sprint in the normal course of business and were provided in response to a summons.  The records provide information about calls between the defendant's cell phone and the cell phone owned by Travis Guenthner.  Each record was provided by a custodian of records with a declaration pursuant to Federal Rule of Evidence Rule 902(11).  The United States has provided certifications of authenticity and underlying documents from the requested entities to the defendant, who has indicated she will not stipulate to the admission of these records.

The underlying documents are business records that fall under the hearsay exception set forth in Federal Rule of Evidence 803(6).  Federal Rule of Evidence 902(11) provides that certified domestic business records of regularly conducted activities can be self-authenticating and therefore admissible under Federal Rule of Evidence 803(6) if accompanied by a written declaration from a records custodian or other qualified person certifying that the records:

    a.    were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

    b.    were kept in the course of a regularly conducted activity; and

    c.    were made as a regular practice.

The Advisory Committee Notes to the 2000 Amendments make it clear that a declaration that satisfies 28 U.S.C. § 1746 would satisfy the declaration requirements of Federal Rule of Evidence 902(11).  The United States has provided the defendant notice and copies of both the underlying certified business records and the certifications of authenticity for those documents in advance of trial.  However, the defendant has indicated she will likely object to the foundation and admissibility of the records.

The United States submits that the certified business records satisfy the requirements of Rule 803(6) and required Rule 902(11) certifications, and respectfully requests that the Court make a pretrial ruling on the admissibility of these records.  As such, there should be no need for in-court testimony of a records custodian. *See United States v. Watson*, 650 F.3d 1084, 1090 n.3 (8th Cir. 2011) (holding that there is no

Confrontation Clause violation by admitting Rule 902 records without calling the custodian or other person qualified to certify the record).  Such a ruling would allow the United States to avoid the need to subpoena and call records custodians from across the country to testify briefly at trial about the maintenance of these records.

Dated: March 3, 2015                    Respectfully submitted,

                                        ANDREW M. LUGER
                                        United States Attorney

                                        *s/Katharine T. Buzicky*
                                        BY: KATHARINE T. BUZICKY
                                        Assistant United States Attorney
                                        Attorney ID No. 671031MA

                                        SARAH E. HUDLESTON
                                        Assistant United States Attorney
                                        Attorney ID No. 0351489